IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| DESTINY PAYNE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:17-CV-01769-AGF |
| SAINT LOUIS, MISSOURI, CITY OF, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter, brought under 42 U.S.C. § 1983 and Missouri common law for false imprisonment, is before the Court on the motion of eight of thirteen Defendants in this case,[1] to dismiss Plaintiff Destiny Payne's amended complaint for failure to state a claim on which relief may be granted, and on the basis of qualified or absolute immunity. For the reasons set forth below, the motion will be granted in part and denied in part.

## BACKGROUND

Plaintiff's claims arise out of her 15-day detention at the St. Louis City Medium Security Institution ("MSI") after criminal charges against her were dismissed, and out of the unsanitary conditions of her confinement, which lasted for seven months in total.

Plaintiff names as Defendants the City of St. Louis (the "City") and the following individuals, solely in their individual capacities: Vernon Betts, the Sheriff of the City;

---

[1] The remaining Defendants are "unknown" Defendants, described further below, who have not been identified in full and who have not entered an appearance in this case.

Charlene Deeken, the Director of the City's Department of Public Safety; Dale Glass, the Commissioner of the City's Division of Corrections; Kimberly Gardner, the City's Circuit Attorney; Aaron Levinson, the City's Assistant Circuit Attorney; Thomas Kloeppinger, the Clerk of the City's circuit court; and Lyda Krewson, the City's mayor (collectively, "Movants"). Plaintiff also named the following "unknown" Defendants, in their individual capacities: Unknown Fields, a supervisor of corrections officers at MSI; Unknown Kratky, an employee of the City's Sheriff's office; Unknown Supervisor, the supervisor of MSI; Unknown Manager, the manager of inmate releases at MSI.[2]

Plaintiff alleges that she was arrested on October 26, 2016, after being questioned by the St. Louis Metropolitan Police about a robbery. Plaintiff was detained at MSI. On January 5, 2017, Plaintiff was indicted on criminal charges[3] in the City's circuit court. The court set Plaintiff's bond at $40,000, with 10% cash. Because Plaintiff could not afford to post bond, she continued to be detained at MSI.

On May 11, 2017, Assistant Circuit Attorney Levinson filed a Memorandum of Nolle Prosequi, which the state court accepted and which dismissed the charges against Plaintiff. By that time, Plaintiff had spent 196 days in detention at MSI. After May 11, 2017, Plaintiff remained in MSI for an additional 15 days.

Plaintiff alleges that on May 24, 2017, Mayor Krewson visited MSI, and spoke to two staff members "about the operation of the jail." Am. Compl., ECF No. 9 ¶ 36. On

---

[2] Plaintiff's amended complaint also named former mayor Francis Slay as a Defendant, but Plaintiff's claims against Slay were dismissed on January 3, 2018, for lack of timely service. ECF No. 30.

[3] The complaint does not specify the crime(s) with which Plaintiff was charged.

May 25, 2017, "a supervisor at [MSI] saw Plaintiff still in detention and asked her, 'You're still here?'." *Id.* ¶ 38. At that time, Plaintiff had not been told that she was being unlawfully detained. *Id.* ¶ 39. The same day, May 25, 2017, "Kratky was informed that Plaintiff should have been released from custody when the charges against Plaintiff had been dropped," and upon hearing that information, Kratky stated, "Not this again." *Id.* ¶¶ 40-41. The two staff members who had spoken with Krewson the day before also came to Plaintiff's cell on May 25, 2017. These staff members "did not speak to Plaintiff, and they left when corrections officers ordered Plaintiff to leave her cell." *Id.* ¶ 42. Plaintiff was transferred to the St. Louis City Justice Center on May 25, 2017, and released from custody around 3:00 a.m. on May 26, 2017.

Plaintiff alleges that for the duration of her seven-month stay at MSI, including the 15 days after charges against her were dismissed, she was subjected to the following conditions of confinement, which she alleges all Defendants knew about: she was verbally abused by MSI staff; did not receive proper medical treatment for a dental condition; was forced to sleep in a mold-infested facility and a facility with a bug infestation, "with many of the bugs larger than cockroaches"; and was subjected to quarantines due to the unsanitary state of the jail, including a quarantine for a lice outbreak during her last several days of detention. *Id.* ¶¶ 46-51, 67.

Plaintiff alleges that Betts, Deeken, Fields, Glass, Kratky, and certain of the unknown Defendants have a responsibility to determine when people are supposed to be released from the custody of Defendant City of St. Louis and to provide for their immediate release, and that Gardner, Levinson, and Kloeppinger have a responsibility to

3

communicate the dismissal of criminal charges to those with direct custody over people incarcerated by the City to ensure the immediate release of innocent citizens. *Id.* ¶¶ 53-55. She further alleges that Deeken, Fields, Glass, Krewson, and certain of the unknown Defendants have or had a responsibility to maintain safe conditions for people detained at MSI. *Id.* ¶ 52.

Next, Plaintiff alleges that, aside from her, other people residing in corrections institutions in St. Louis City were unlawfully detained after charges had been dropped against them, including clients of the Missouri State Public Defender System, and that all Defendants knew this was the case. *Id.* ¶¶ 57-58. Plaintiff further alleges that all Defendants have or had the responsibility to set policies, direct staff training, and establish patterns or practices of the City with respect to the incarceration and release of individuals entitled to release, and with respect to maintaining safe and sanitary conditions at MSI, and that Defendants knowingly failed in these responsibilities, thus causing Plaintiff to be wrongfully incarcerated and wrongfully punished. *Id.* ¶¶ 56-76. Finally, Plaintiff alleges that Defendants' actions caused her physical harm and severe emotional distress.

Plaintiff's amended complaint contains 10 counts: Fourth Amendment, due process, and state-law false imprisonment claims, arising out of her 15-day wrongful incarceration and asserted against Betts, Deeken, Fields, Glass, Gardner, Levinson, Kloeppinger, and certain of the unknown Defendants (Counts I, II, and IV); a due process claim arising out of her conditions of confinement and asserted against Deeken, Fields, Glass, Krewson, and certain of the unknown Defendants (Count III); and supervisory

4

claims asserted against all Defendants for failure to establish policies, failure to properly train staff, and establishing a pattern or practice with respect to wrongful incarceration of citizens (Counts V, VI, and VII) and with respect to safe and sanitary conditions of confinement for pretrial detainees (Counts VIII, IX, and X). Plaintiff seeks compensatory and punitive damages.

In Counts I, II, and IV, Plaintiff alleges that the named Defendants "knew or should have known that Plaintiff was wrongfully imprisoned" and that these Defendants were "directly responsible for depriving Plaintiff of her freedom." *Id.* ¶¶ 81, 83, 93, 95, 125. Plaintiff likewise alleges in Count III that the named Defendants subjected Plaintiff to the unsafe and unsanitary conditions and were "directly responsible" for those conditions. *Id.* ¶¶ 104, 115.

## **ARGUMENTS OF THE PARTIES**

Movants argue that Plaintiff fails to state a claim against the City because she has failed to plausibly allege that her injuries were caused by any unconstitutional policy, pattern, or practice of the City. Movants argue that a single instance of improperly prolonged incarceration is insufficient to establish an unconstitutional custom, and Movants contend that Plaintiff has not adequately identified any other persons who were unlawfully detained by the City after charges against them were dropped. Movants further argue that Plaintiff has not plausibly alleged that her conditions of confinement were so extreme as to deprive her of the minimal civilized measures of life's necessities, which Movants contend is required to state a constitutional violation.

5

Next, Movants argue that Plaintiff fails to state a claim against the individual Movants named in each count because Plaintiff has failed to allege that any of them was personally involved in violating Plaintiff's rights. Movants further argue that Plaintiff's federal claims against the individual Movants are barred by qualified immunity, and that prosecutors Gardner and Levinson and court clerk Kloeppinger are also entitled to absolute immunity for all claims. Finally, Movants argue that the public duty doctrine bars Plaintiff's false imprisonment claims because any duties Movants owed with respect to the false imprisonment were owed to the general public, not Plaintiff individually.

In response, Plaintiff argues that she has adequately stated a claim against the City by pleading that there is a pattern and practice in the City of wrongful incarceration in circumstances similar to that suffered by Plaintiff, as evidenced by the "Not this again" statement by Kratky, and by pleading that several clients of the Missouri Public Defender were unlawfully detained by the City after charges had been dropped against them. Further, Plaintiff argues that she has sufficiently pled that the City failed to establish effective policies and failed to properly train staff with respect to the alleged violations of her constitutional rights, which is sufficient to state a claim for municipal liability under § 1983.

Next, Plaintiff argues that she has sufficiently pled the personal involvement of the Movants named in each count, and that, at this pre-discovery stage, she has named "those officials she currently knows of who were responsible for depriving her of her rights." Plaintiff argues that "[f]or detainees to be released as required under the law, orders must somehow be given to custodial authorities to release people," and that, as pled by

6

Plaintiff, "Gardner, Levinson, and Kloeppinger were the responsible parties within the justice system to notify custodial authorities that Plaintiff should be released." ECF No. 23 at 10. Plaintiff contends that the remaining Movants are the custodial authorities, employed by the Sheriff's Office and the Department of Public Safety, which includes the Division of Corrections, and which, according to the City's public website, has control over the custodial care of pretrial and sentenced inmates confined at MSI. ECF No. 23 at 11 (citing https://www.stlouis-mo.gov/government/departments/public-safety/corrections/commissioner-corrections-office.cfm). Plaintiff further argues that she has adequately pled a constitutional violation for her conditions of confinement, which occurred over a seven-month period.

Next, Plaintiff contends that Movants are not entitled to qualified immunity because the rights cited in her complaint are all clearly established; and that Gardner, Levinson, and Kloeppinger are not entitled to absolute immunity because they acted beyond the scope of their positions. Finally, Plaintiff argues that the public duty doctrine does not apply to Plaintiff's false imprisonment claim because Movants owed a duty to Plaintiff to ensure she was not improperly detained.

In reply, Movants reiterate their arguments in support of dismissal and further contend that Plaintiff's allegations of constitutional violations are merely conclusory.

## **DISCUSSION**

For a plaintiff to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

To state a claim under § 1983, a plaintiff must allege (1) that the defendant acted under color of state law; and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected federal right. *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009).

> The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known. The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. The qualified immunity analysis thus is limited to the facts that were knowable to the defendant officers at the time they engaged in the conduct in question. Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant.

*Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (citations omitted). To determine whether a defendant is entitled to qualified immunity, the Court must "conduct a two-step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the

8

right was clearly established at the time of the deprivation." *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015).

**<u>Claims Against the City</u>**

"A municipality may be liable under § 1983 when an official municipal policy or custom caused a violation of a plaintiff's substantive due process rights." *Russell v. Hennepin Cty.*, 420 F.3d 841, 846 (8th Cir. 2005) (citations omitted). "[A] policy is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). "A municipal custom is a practice of municipal officials that is not authorized by written law, but which is so permanent and well-settled as to have the force of law." *Russell*, 420 F.3d at 849.

"To establish a constitutional violation resulting from such a custom, a plaintiff must show that his alleged injury was caused by municipal employees engaging in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized." *Id.* Likewise, "municipal liability for . . . failure to supervise . . . requires proof that the failure amounts to deliberate indifference to the rights of persons with whom the employee comes into contact," and that the "municipal inaction [is] the moving force behind the constitutional violation." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.*

Movants argue that Plaintiff has not established the existence of such policies, customs, or patterns with respect to her claims. In evaluating a motion to dismiss, however, the question is not what the plaintiff has established, but rather what she has pleaded. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly,* 550 U.S. at 562 (emphasis omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id*. at 556.

Plaintiff has alleged that the violations of both her right not to be detained after charges against her were dismissed, and her right to humane conditions of pretrial confinement, were committed as a result of the hiring, training, supervision, policies, customs, and practices, or lack thereof, of the City. She has further alleged that other individuals have been similarly wrongfully detained; that upon learning of her detention, a Sheriff's office employee commented "[n]ot this again"; and that she was subjected to the allegedly unconstitutional conditions of confinement over a seven-month period of time. At this early stage, the Court finds that Plaintiff has stated a plausible claim for municipal liability.

**Conditions of Confinement**

The "standard applicable to 'conditions of confinement' claims by pretrial detainees . . . is whether conditions amount to punishment of the detainee, for, under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." *Hall v. Ramsey Cty*., 801 F.3d 912, 919 (8th Cir. 2015). The standard depends on the

totality of the circumstances, with a focus on "the length of [the detainee's] exposure to unsanitary conditions and how unsanitary the conditions were." *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). "Conditions, such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months." *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989).

Again, at this early stage, given the fact-specific nature of Plaintiff's claim, which may depend, for example, on the severity and duration of the mold and/or insect infestation, the Court cannot say that Plaintiff fails to state a claim based on her conditions of confinement as a matter of law.

**<u>Absolute Immunity for Prosecutors and Court Clerk</u>**

The common law grants absolute immunity to judges and certain judicial officers, as well as prosecutors, acting within the scope of their judicial or prosecutorial duties. *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009). Considerations of public policy underlie this type of immunity, including a "concern that harassment by unfounded litigation" could cause a "deflection of the [officer's] energies from his public duties and also lead the [officer] to shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.*

Thus, the Supreme Court has held that "absolute immunity applies when a prosecutor prepares to initiate a judicial proceeding or appears in court to present evidence in support of a search warrant application." *Id.* at 343. But "absolute immunity may not apply when a prosecutor is not acting as an officer of the court, but is instead engaged in, say, investigative or administrative tasks." *Id.* at 342. "To decide whether

11

absolute immunity attaches to a particular prosecutorial activity, one must take account of [the] functional considerations" of the activity, including whether the activity is "connected with the prosecutor's basic trial advocacy duties." *Id.* at 342, 346.

Several courts have held that a prosecutor's act of "omitting to see to the release" of an individual when the basis for detention no longer exists is an administrative task not entitled to immunity. *See, e.g.*, *Odd v. Malone*, 538 F.3d 202, 215 (3d Cir. 2008) (holding that a prosecutor's act of failing to notify relevant authorities that an underlying action for which a detainee was being held as a material witness had been dismissed, was an administrative act for which the prosecutor was not entitled to absolute immunity); *Schneyder v. Smith*, 653 F.3d 313, 334 (3d Cir. 2011) (holding that *Van de Kamp* did not alter the result in *Odd* because the "duty of disclosure [of a change in the circumstances surrounding the detention of a material witness] was neither discretionary nor advocative, but was instead a purely administrative act not entitled to the shield of immunity"); *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1151–52 (2d Cir. 1995) ("Keeping a person in state custody *after* the termination of all charges against him has nothing to do with conducting a prosecution for the state. . . . [T]he handling of a prisoner after the complete conclusion of all criminal charges is not a prosecutorial task but rather an administrative one . . . ."). The Court agrees with these authorities and holds that Gardner and Levinson are not entitled to absolute immunity for their alleged actions in failing to inform the relevant authorities of the dismissal of the charges against Plaintiff.

But the Court reaches a different conclusion with respect to Kloeppinger, the court clerk. "[C]ourt clerks have absolute quasi-judicial immunity from damages for civil

12

rights violations when they perform tasks that are an integral part of the judicial process, unless the clerks acted in the clear absence of all jurisdiction." *Boyer v. Cty. of Washington*, 971 F.2d 100, 102 (8th Cir. 1992); *see also White v. Camden Cty. Sheriff's Dep't*, 106 S.W.3d 626, 633 (Mo. Ct. App. 2003) (noting that absolute immunity "has been adopted by Missouri as recognized by the U.S. Supreme Court" for "[c]onduct which is intimately associated with the judicial phase of the judicial process") (citations omitted).

A "mistake" does not take away quasi-judicial immunity, "even if it results in grave procedural errors." *Mullis v. U.S. Bankr. Court for Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987); *see also Martin v. Hendren,* 127 F.3d 720, 722 (8th Cir. 1997) (explaining that the "nature of the function being performed, not the particular act itself," controls the quasi-judicial immunity inquiry, and that immunity is not lost if the challenged action was taken "in error or was in excess of [the officer's] authority"). Further, "[a]n omission can still be a judicial act." *Saum v. Savage*, No. 2:13-CV-00872, 2014 WL 3105010, at *4 (S.D. Ohio July 7, 2014).

The Court concludes that any failure on the part of Kloeppinger to communicate the dismissal of criminal charges to the custodial authorities in Plaintiff's case was an omission in connection with a "judicial function" and thus protected by quasi-judicial immunity. *See, e.g.*, *id.* (holding that "*not* sending a judge's dismissal order to the County jail," and mistakenly failing "to remove [a plaintiff's] invalid warrant from the compute system," are both omissions in connection with "an integral part of the judicial process" and, thus, protected by judicial immunity); *see also Boyer*, 971 F.2d at 102

13

("[T]he filing of complaints and other documents is an integral part of the judicial process and [the clerk] would be protected by judicial immunity from damages for civil rights violations committed in connection with the performance of such tasks."). Therefore, the Court will dismiss Plaintiff's claims against Kloeppinger in Counts I, II, IV, V, VI, and VII, all stemming from Kloeppinger's alleged failure to communicate the dismissal of the charges against Plaintiff to the relevant custodial authorities.

**Personal Involvement of Movants**

"Respondeat superior is not applicable to § 1983 claims." *Ouzts v. Cummins*, 825 F.2d 1276, 1277 (8th Cir. 1987) (per curiam). Thus, "a warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement," which is required to state a § 1983 claim against an individual defendant. *Id.* However, the warden "might be liable if [he] had made policy decisions resulting in the alleged unconstitutional conditions." *Id.*

Under § 1983, a supervisor may be held liable for constitutional violations caused by his or her "failure to properly supervise and train the offending employee." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014).

> Individual liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights . . . . For a supervising officer to be liable under § 1983 for the constitutional violation of a subordinate based on a failure to supervise . . . the supervisor must have demonstrated deliberate indifference or tacit authorization of the offensive acts.

*Doe HM v. City of Creve Coeur, Mo.*, 666 F. Supp. 2d 988, 997 (E.D. Mo. 2009) (citations omitted). "Proof of actual knowledge of constitutional violations is not . . . an

absolute prerequisite for imposing supervisory liability . . . . [However, a] single incident, or a series of isolated incidents, usually provides an insufficient basis upon which to assign supervisory liability." *Howard*, 887 F.2d at 138.

Likewise, under Missouri law (for the purpose of the false imprisonment claim), "public officers are not responsible for acts of subordinate officials, if such subordinates are themselves employees of the government, where there is no negligence on the part of such public officials in employing them, unless the superior officer has directed or encouraged or ratified such acts, or has personally co-operated therein." *State ex rel. Green v. Neill*, 127 S.W.3d 677, 679 (Mo. 2004).

As to Krewson, no plausible inference can be drawn to suggest that Krewson received actual or constructive notice of a pattern of unconstitutional acts and was deliberately indifferent to or authorized those acts. The closest Plaintiff comes is to allege that Krewson visited MSI the day before Plaintiff's release and spoke with two staff members who later visited Plaintiff's cell but did not talk to Plaintiff. These allegations do not suggest that Krewson discussed Plaintiff or Plaintiff's detention with anyone, that she knew or should have known of the detention, or that she was exposed to or saw the particular unsanitary conditions alleged by Plaintiff. Therefore, the Court will dismiss Plaintiff's claims against Krewson as to all counts.

Likewise, with respect to Gardner, Levinson, and Kloeppinger, no plausible inference can be drawn from the complaint that these individuals had control over, or anything to do with, Plaintiff's conditions of confinement. Therefore, the Court will

dismiss Plaintiff's supervisory claims against these Movants regarding Plaintiff's conditions of confinement (Counts VIII, IX, and X).[4]

As to the rest of the complaint, the viability of Plaintiff's complaint turns on whether remaining Movants named in each count had actual or constructive notice of and were deliberately indifferent to or authorized the asserted violations. This is a close question, and the Court agrees with Movants that Plaintiff's complaint is light on facts. But with respect to Plaintiff's wrongful incarceration and related supervisory claims (Counts I, II, IV, V, VI, and VII), a reasonable inference can be drawn based on the limited record that the remaining Movants named in these Counts were on notice of and deliberately indifferent to or authorized the violations alleged. *See, e.g.*, *Davis v. Hall*, 375 F.3d 703, 716 (8th Cir. 2004) (affirming the denial of summary judgment on § 1983 claims for prolonged incarceration as to those defendants who "were on notice that [the wrongfully detained person] was entitled to be released").

Likewise, with respect to Plaintiff's conditions of confinement and related supervisory claims (Counts III, VIII, IX, and X), it is not implausible that the remaining named Movants were responsible for the policy decisions that created the conditions alleged by Plaintiff to be unconstitutional. *See, e.g., Chapman v. Simon*, No. 4:05-CV-2334-TCM, 2006 WL 335507, at *2 (E.D. Mo. Feb. 13, 2006) ("[B]oth the director of the government department that is charged with management of the MSI and the MSI

---

[4] As these are the only remaining counts asserted against Kloeppinger, Kloeppinger will be dismissed from this case.

superintendent may be held liable for policy decisions that create unconstitutional conditions.").

**Qualified Immunity**

Movants' qualified immunity arguments are based on their contention that they are not alleged to have been personally involved in any violation of Plaintiff's rights. Except as set forth above, based on the limited record at this stage, the Court disagrees. Accordingly, the remaining Movants are not entitled to qualified immunity as it was clearly established at the time of the events in this case that an individual may not be detained after charges against her have been dismissed, and that a pretrial detainee may not be subject to inhumane conditions of confinement. *See, e.g.*, *Davis*, 375 F.3d at 712 (wrongful, prolonged incarceration); *Farmer v. Brenna*n, 511 U.S. 825, 832 (1994) (conditions of confinement).

**Public Duty Doctrine**

As noted above, Movants argue that they are shielded from liability as to the state-law false imprisonment claim by Missouri's public duty doctrine. "The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Southers v. City of Farmington*, 263 S.W.3d 603, 611 (Mo. 2008). The rule "is based on the absence of a duty to the particular individual, as contrasted to the duty owed to the general public," and "negates the duty element required to prove negligence, such that there can be no cause of action for injuries sustained as the result of an alleged breach of public duty to the community as

a whole." *Id.* at 611-12 (holding that a police officer engaged in an emergency pursuit was protected by the public duty doctrine from tort liability for a resulting collision).

Movants do not explain why the public duty doctrine would apply to a false imprisonment claim of the sort Plaintiff alleges. Nor do Movants cite any authority for such a proposition. Plaintiff's false imprisonment claim alleges a violation of duties owed to Plaintiff, individually, not to the general public; as such, the public duty doctrine does not apply. *See Sturgeon v. Holtan*, 486 S.W.2d 209, 211 (Mo. 1972) ("False imprisonment is . . . the direct restraint by one person of the physical liberty of another without adequate legal justification; and it is said the essence of the tort consists in depriving the plaintiff of his liberty without legal justification.") (citation omitted).

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion to dismiss filed by Defendants the City of St. Louis (the "City"), Vernon Betts, Charlene Deeken, Dale Glass, Kimberly Gardner, Aaron Levinson, Thomas Kloeppinger, and Lyda Krewson, is **GRANTED in part and DENIED in part**, as set forth above. ECF No. 13. Plaintiff's claims against Defendants Krewson and Kloeppinger are **DISMISSED in entirety**; Plaintiff's claims against Defendants Gardner and Levinson are **DISMISSED in part**, as to Counts VIII, IX, and X only; and the motion is otherwise **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 29th day of January, 2018.